your honor. Thank you. May it please the court, John Refermat for John and Maria Stensrud. By the way, the condemnors name is a mouthful, so RGRTA or condemnors is what I call them. But this is truly a David and Goliath case. And the reason we're here today is because my clients are entitled to a federal forum in this federal condemnation case. There's no question. Well, they don't have to wait for us. I mean, they don't have to exhaust state remedies. That much is now clear. But if you choose state remedies, the issue is why are you not bound by that under just straight claim preclusion? Right. And under straight claim preclusion, that would be correct, your honor. But that's not what happened here. What happened here is Nick was decided in the middle of the underlying litigation, which was state court litigation. And RGRTA, by the way, the condemnor, they knew this was a federal case. They got an estimate that required the yellow book, which is the basically states the federal law, which is It's a federal case. It's a case that can be brought under federal or state law, right? It could, your honor, but It's a constitutional case, but you can bring that in state court. Correct. But, your honor, here's the key distinguishing factor, or at least a key distinguishing factor in this case is that USPAP, which is the state appraisal regime, is very different. It's much less rigorous than the yellow book, which is federal law. Okay? So what happened here is it was a mere accident of timing. The condemnor, big state authority, commenced a state condemnation proceeding. That required my clients in the context of that proceeding at that time to make a claim in that proceeding, and that's what we did. And then there was, as often happens, unfortunately, with state and local condemnation procedures, there was no end to the mischief. No end. No end to the mischief. I mean, I think your, your, I guess your, one of your arguments is that they couldn't, after Nick is decided, they couldn't get out, they couldn't stop unilaterally the state litigation. Is that right? That's correct, Judge Sullivan. Right. And so, but I mean, isn't the remedy then, isn't then the remedy to try to get out of the state litigation? Oh, we, we, what we did, unsuccessfully, we did everything we could, Your Honor. And, you know, I mean, you did everything you could. I mean, what, what did that entail? Well, we first tried to secure, because the federal action was pending and proceeding rapidly, so we first tried to secure a voluntary dismissal of the state claim, which was already by that time had some problems with it due to a fairly obscure state regulation, which doesn't apply here. Of course, the condom norm Did you go to the federal court and say, stay the state action or something like that? We did, Your Honor. And we did shortly before the state court trial. You know, again, this is David and Goliath. I wasn't going to make a motion like that. And frankly, a low probability motion. I mean, we know that when federal courts are asked to enjoin state proceedings, that's pretty rare. Okay? So I, I can't sit here and tell you that I know that that would not have happened if I'd made the motion a few months before. But we know that those are rare. So, yeah, we were, we were literally forced into state court, which, although not the factual scenario in Nick, is absolutely contrary to the spirit of Nick. For a federal condemnation action, this should have been that in the first place. Condemnees are not supposed to have to fight protracted litigation battles for years and years. We're going on, it's going to be nine years this year. Okay? And my clients have received money during that time, but it took them a very long time. And they're not supposed to have to run up, frankly, you know, gargantuan legal fees just to get a proper methodology. And that proper methodology is prescribed by the yellow book, which is federal law. But the condom nor ignored that. In the delay under state law, your client was getting 9% interest per item, correct? Yeah, they, they did, Your Honor, eventually, yes. But that was about seven years after the fact. And so that's why the interest was so large. The legal fees, and I, I, I'll tell you right now, I've modified my fee. I mean, I've, I've performed much of the work contingent, all right, and have not billed until we receive money. That is simply not the way, we all know this, that condemnations are supposed to work. The power of the state, whether it's a state or a federal condom nor, is so immense compared to two individuals. That's where the David and Goliath comes in. The law protects condomnees and gives them every legal benefit. What happened here, regrettably, was this huge state authority tried to run them over. And I think with most people, it would have happened. But my clients are extremely, they persevere, okay, and they believe in the principle. But, I mean, look, to the extent that they're being wrongly run over, I mean, then you get to appeal in state court, right? The problem, yes, Your Honor, but the problem with that is that there is this state regulation, which in uniform trial rules, which is clearly intended to prevent surprise, you know, ambushes in the trial, right? If it's not in your appraisal, you can't introduce it. Well, what that really means is you have to disclose, of course, evidence beforehand. You have to disclose experts. We did that. Mr. Eisenman, who conducted the only income capitalization in this case, was properly disclosed under the CPLR as an expert. With all respect to the state courts, and we should recall that the initial motion, I think, was in 2016, before now-retired Justice Thomas Stander, his opinion striking all, striking all of the income approaches that we had. We had multiple income approaches only because we anticipated that something like this might happen. It was a somewhat My client was, as our brief describes in great detail and as the appendix details, he tends to pursue properties in areas that have lower taxes. And that means, even though it's not what most people would consider maybe the best area, it's good for him and for them because their net operating income is that much greater with the lower taxes and the frankly, and respectfully, that's not supposed to happen. The United States Constitution, the Fifth Amendment, and the federal judiciary are the guarantors of just compensation generally and particularly here where there's no dispute about this. Eighty percent of the funding for this project that this public authority, for which this public authority took my client's property, was federal funding. Clearly, federal law applies here. And we've explained real briefly why, you know, the mechanical, respectfully, the mechanical application that the district court did of res judicata, claim preclusion specifically, does not apply here. And we also have, if that weren't enough, and I I think res judicata is supposed to be pretty mechanical, isn't it? I mean, look, it seems to me that if what you're saying is that the state process is rigged, well, then you get, I think, to basically litigate up through the state system and then you can go to the Supreme Court and say that this violates the takings clause. But I don't know that you get to say that the judgment of the lower district court is not entitled to res judicata effect. I mean, there is another path that would, if it's as bad as you're describing, would give you relief, right? Are you saying it would be the United States Supreme Court? Yeah. Okay. Well, Your Honor, respectfully, you know, we know what the probabilities of that are, and I don't think that's what's supposed to happen, with all respect. What's supposed to happen is when you finish the state process, you can bring a claim, because it's a Federal claim under the United States Constitution, in Federal district court. We did that promptly. As soon as Nick was decided, virtually as soon as it was decided, we started the Federal action. We prosecuted it promptly. Unfortunately, just, again, mere accident of timing, which cannot control here. A mere accident of timing, when Nick was decided versus when this case started, simply cannot control here. It is not just, and it does not comport with the undisputed and essential role of the Federal courts as the guarantors of just compensation. This Court already knows that because of its own Burgess decision, which, notwithstanding the factual, you know, every case has slightly different fact patterns, but this Court clearly stated that where the first court, the prior court, where there are barriers there to full relief, it should not be a mechanical application, Judge Sullivan. And so that's exactly what we have here. And we have the Harrison case. You know, Nick is still, it's only five years old, if that, but even in that time, we have the Harrison decision from the Sixth Circuit, and, of course, Ohio has a very similar claim preclusion definition as New York, and they've said, yeah, you can't, basically, you can't deprive somebody of the right to just compensation. It's ultimately determined by Federal courts based on a mere accident of timing or some kind of shenanigans. But it's only determined by Federal courts. I mean, like, it's not, if your client wanted to stay in the State court, that would have been no problem, right? Well, we couldn't, Your Honor, because income capitalization was excluded, and under the Yellow Book, it's clearly admissible under Federal rules. But my point is that your clients have to, now, in 2024, an individual in your client's shoes could decide to start a case in State court or Federal court, right? Yes, absolutely. Yes, sir, absolutely. And they could choose Federal, State court, and then it would be addressed there, and then, you know what I'm saying, in that situation, then, clearly, it would be raised to the kind of application of the judgment there, right? Well, let's take that hypothetical, Your Honor. I appreciate that. If this happened today instead of in 2015, then, yes, my clients could have, and I assure you, we would have, just like we did in 2019, as soon as we were allowed to, we would have commenced a Federal action. That's correct. Now, that being said, then you would have a battle of horror. You would have, presumably, if they tried the same stuff again, you'd be in State court with this public authority, which is a State public authority with 80 percent Federal funding, and we would say, no, the Federal action, it would be one of those races to the courthouse steps, not just in terms of filing, but in terms of how fast... Well, but, I mean, if your client could choose, I mean, a client, let's say your client, a person with a claim like your client's taking this clause case could start and end in State court, right? They could. And if they did, then, if they later filed a Federal case saying the same thing, then race to the counter would apply, right? Yes, Your Honor. Okay. So, really, the only issue here for you is that Nick came down after your client had started the case believing that they had to start in State court, right? Yeah, we had to file a claim within the pending State proceeding. You're saying that's not fair? Oh, absolutely, Your Honor. That is the crux, or at least a crux of our argument. Yes, okay. Yes, sir. All right. Well, we've gone way over time. Oh, can I ask you a question? I just want to prove that despite the fact that I'm silent, I'm listening. And my question is, what is the Yellow Book? Ah, the Yellow Book is the Uniform Appraisal Standards for Federal Land Acquisition, which is another mouthful, which is why we call it the Yellow Book. The Yellow Book has been around for about 55 years, I believe. It's over 50. And it is promulgated by the interagency – by an interagency organization that basically collects Federal law and updates it every few years. Well, we don't expect it to be in our library. I mean, that's not quite the same as a Federal  Oh, yeah. I'm sorry. Yeah. Yes, Your Honor. I mean, the movie is not in the library. Oh, my. But it's – I'm glad – I'm so glad, Your Honor, that you asked that question because I had a lot to say about the Yellow Book, too, but, you know, we – so. Thank you. All right. Thanks very much, Mr. Raffermath. We'll now hear from Mr. McMahon. Your Honor, may I please the Court? Tim McMahon here on behalf of the Respondent. Your Honors, I submit that this case presents a clear application of res judicata. The dispute between these parties is in excess of $750,000. The State court action and now the dismissed Federal court action involve the same parties, seek identical relief, that being just compensation, and stem from the identical harm, that being the taking of the property. So how does any question about that? I guess the issue is what do you do with this narrow band of plaintiffs who started in State court before Nick had a pending Federal case that was sort of just waiting in the wings. Nick gets decided and they try to then get out of the State case. That's a pretty small slice of cases, I would imagine. Sure. And, Your Honor, I do think we have some guidance on that. And I think the guidance we have is this Court's decision in Morabito, the Eleventh Circuit's decision in Ocean Palm, and the Fifth Circuit's decision in Tejas Motel. And let's talk a little bit about the Harrison case, the Sixth Circuit case that was cited. That case was recently distinguished by its own circuit, the Sixth Circuit, in which the key there was that the takings claim in that case was never actually litigated before the District Court. Okay. That case was distinguished by a separate Sixth Circuit case, Rose v. Oakland County. Okay. And they said just that, that the takings claim in Rose was actually litigated before the District Court, just like it was here. Okay. And so what I really think this issue comes down to, Your Honors, is that the plaintiffs do not like the result. Okay. They wanted a Federal forum as soon as Nick came out. But what does Nick, what did Nick do in that Federal forum? But since that time, we've learned through this Court and others that Nick did not change res judicata. In other words, Nick, and the cases say just this, Nick did not guarantee that all takings plaintiffs can have their day in Federal court. I submit, again, that this Court has resolved this issue in 2020 in Morabito. The Eleventh Circuit, the Fifth Circuit, and now the Sixth Circuit have said the same thing. And just a point here that I don't want to get stuck in the weeds on here, but we, in the briefing and today during oral argument, what I'm hearing is evidentiary errors. Okay. Issues that should have been presented to the State Court that, for whatever reason, couldn't be. Again, they have a remedy before the Fourth Department, the Appellate Division Fourth Department. As a matter of fact, for this, just so this Court knows, that appeal has been perfected. It has been argued. And the parties are awaiting decision. And it's anticipated that the decision actually will come out, in my view, likely tomorrow. Okay. That's the remedy. I predict that, Your Honor, just because it's been pending for some time. It was argued earlier in the year. And they have a decision release date tomorrow. So I'm making a healthy, optimistic prediction that we may hear something from the Appellate Division tomorrow. But despite that, my point here is that the res judicata jurisprudence tells us that res judicata is not affected or does not require that an underlying judgment be free from error. Okay. We have a judgment. And here, in this case, there's no dispute that the same transaction or series of transactions led to the same identical dispute in Federal court. Is one of the issues in the State appeal the inability to withdraw or to withdraw the case? No, Your Honor. That issue is not presented to the Appellate Division. No. I mean, interlocutory appeals are available in the State court. Correct. So the interlocutory appeal was taken on that. Correct, Your Honor. And if I may, just to go back to some of these evidentiary issues, I urge the Court, because the Appellate Division Fourth Department has entertained some of the arguments that are being raised today. We've heard about Mr. Eisenman. We've heard about this uniform rule regarding this regulation. We've heard in the briefs about income capitalization. I urge this Court to take a look at the Fourth Department's decision on these issues. That's 173, 83rd, 1699 decided in 2019. The Appellate Division there told the plaintiffs, okay, that Eisenman was not prohibited from testifying. They told the plaintiffs that income capitalization could be in the mix, okay, and all of that would go to the weight of the evidence. Now, these issues have been heavily litigated, have been heavily decided. I do not want to confront this David versus Goliath idea. However, I think it's important to note that not only has the underlying judgment been satisfied for the $509,000, but in addition to that, okay, in excess of an additional $200,000 was satisfied, which goes directly to costs and attorneys' fees at litigating this case. That judgment has been satisfied as well, Your Honors. So in closing, and this should come as no surprise, we believe the decision in order of the District Court should be affirmed. Thank you for the time today, Your Honors. Thank you. Mr. Refferman, you've got three minutes for rebuttal. Thank you, Judge Sullivan. Look, I hope our briefs were clear. We submitted two of them. These are not about evidentiary issues. These are about a state regulation that, as interpreted, so from that standpoint, you could say it's an evidentiary issue, but as interpreted, it precludes just compensation as defined by the Yellow Book, as defined by federal law, and that is precisely, precisely the reason we need a federal forum. An interlocutory appeal was not a practical option for us at that time. Why not? I mean, it sounds like your real beef is that you weren't able to get out of the state action after Nick, and so why wasn't that an option for interlocutory appeal? Because, Your Honor, I believe when you look at the Supreme Court with Nick, the remedy is a federal action, and we appealed. I think the proper course was exactly what we did. The remedy is not the federal action. All Nick says is that you don't have to go to state court first. So your remedy after having started in state court before Nick and trying to get out of it and being denied, it would seem to me, is within state court, just go to the state court, the appellate division or wherever you need to go to say that you should have been allowed to withdraw. So, Your Honor, I will address that point directly. First of all, I don't know when the decision is coming out. I do know what it's going to say, and it's going to affirm, because it was in 2019 that the appellate division and fourth department, and I need to correct counsel here as part of this response, but they interpreted that state regulation to say that Mr. Eisenman could not testify to income capitalization. There is only one income capitalization in this case. This is key. But I'm not talking about that. I'm just saying that it seems to me that your best sort of equitable argument is that you should have been clubbing on the state action after Nick. Yes. And you're saying that you weren't allowed to do that. The state process basically says both sides have to agree at that point. And you didn't appeal that. You didn't challenge that, interlocutory or unappealing, right? Well, Your Honor, we actually... Simple question. Yes or no? No respectfully, but I'd like to just Okay. All right. Good. No, here's the reason. When that decision comes out, my clients have, and this is the proper procedural course if they choose to do it, they have the right... I have no doubt what this decision is going to say. The fourth department has already spoken to the issue. We literally had to exhaust our remedies. That's the only reason we did that. We knew what the answer would be. We can ask the court of appeals for leave to appeal that state constitutional issue because just compensation is guaranteed at the state level as well. It's just that the federal courts are the ultimate guarantors of that, of course, under the U.S. Constitution. So these are not simple evidentiary issues. And very quickly about Harrison. The issue in Harrison was that the plaintiff, the condomnee, commenced a direct action as opposed to exhausting her The principle is what's important, Your Honors, and it is that a mere accident of timing cannot defeat the undisputed rights of condomnees in a federal condemnation claim to have their claim heard in federal court. And there's an easy solution here. I mean, the briefs talk about what the right answer is, but, you know, what should happen here is that this case should go back to Judge Wolford. There should be a trial and everything that attends the trial of a federal condemnation claim. And Judge Wolford will do what she's going to do with it. If she believes that my clients, after all this time and $509,000, which is a lot less than Mr. Eisenman says just compensation is, if she believes that that is sufficient, then there will be no cost. What if she thinks it's worth less? Then you'll take the higher of the two judgments? Isn't that the whole point of res judicata? That we don't do it this way, it's not efficient, and it's also not appropriate? Well, we also don't apply it when it's unjust, and that's what the situation is here. Okay. All right. Well, thank you both. We will reserve a seat and we'll argue. Thank you, Your Honors.